MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ABRAHAN VELAZQUEZ CUAUTLE,
ARTURO GIL GARITA, CESARIO
VAZQUEZ TALAVERA, CRISTO GARCIA
SANTIAGO, JOSE  HUMBERTO BECERRA
BUITRAGO, JOSE OSCAR JUAREZ
RAMOS, JOSE PEREZ ESPINAL, JOSE
YAT CHIC (A/K/A EDGAR CASTRO),
PEDRO RAMALES, PEDRO TECUN POL,
RAFAEL PASCUAL CHACAJ BATZ (A/K/A
EDGAR PEREZ), and RAUL ANTONIO
CRUZ, *individually and on behalf of others
similarly situated,*

|  |  |
|---|---|
|  | **COMPLAINT** |
|  | **COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)** |
|  | **ECF Case** |

                    *Plaintiffs*,

            -against-

HUDSON MARKET 303 LLC (D/B/A
HUDSON MARKET), CHRISTOPHER
SANTOS, CHAN K. PARK, TERRENCE
PARK, SCOTT BARNER, GREG
GROSSMAN, ADAM DOE, JAZMIN DOE
and ZACK DOE,

                    *Defendants.*
-------------------------------------------------------X

Plaintiffs Abrahan Velazquez Cuautle, Arturo Gil Garita, Cesario Vazquez Talavera,

Cristo Garcia Santiago, Jose Humberto Becerra Buitrago, Jose Oscar Juarez Ramos, Jose Perez

Espinal, Jose Yat Chic (a/k/a Edgar Castro), Pedro Ramales, Pedro Tecun Pol, Rafael Pascual

Chacaj Batz (a/k/a Edgar Perez), and Raul Antonio Cruz, individually and on behalf of others

similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace &

Associates, P.C., upon their knowledge and belief, and as against Hudson Market 303 LLC (d/b/a Hudson Market), ("Defendant Corporation"), Christopher Santos, Chan K. Park, Terrence Park, Scott Barner, Greg Grossman, Adam Doe, Jazmin Doe, and Zack Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1. Plaintiffs are both current and former employees of Defendants Hudson Market 303 LLC (d/b/a Hudson Market), Christopher Santos, Chan K. Park, Terrence Park, Scott Barner, Greg Grossman, Adam Doe, Jazmin Doe, and Zack Doe.

2. Defendants own, operate, or control a marketplace, located at 303 10th Avenue, New York, NY 10001 under the name "Hudson Market".

3. Upon information and belief, individual Defendants Christopher Santos, Chan K. Park, Terrence Park, Scott Barner, Greg Grossman, Adam Doe, Jazmin Doe, and Zack Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the marketplace as a joint or unified enterprise.

4. Plaintiffs have been employed as line cooks, cook helpers, salad preparers, porters, dishwashers, food preparers and ostensibly as delivery workers at the marketplace located at 303 10th Avenue, New York, NY 10001.

5. Plaintiffs Juarez, Chic, Ramales, and Chacaj ostensibly have been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to washing dishes, stocking merchandise, preparing salads, sweeping and mopping, moving boxes, taking out the trash, folding cardboard boxes for deliveries, filling the beverage stations, picking up hydrogen gas, bringing products from the basement to the market, cleaning the market, basement, and the bathrooms, dishwashing,

accommodating the sodas, preparing the egg containers, and cutting vegetables hereafter the ("non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.      Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.      Furthermore, Defendants have repeatedly failed to pay Plaintiffs wages on a timely basis.

10.      Defendants have employed and accounted for Plaintiffs Juarez, Chic, Ramales, and Chacaj as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

11.      However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because these Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.      In addition, Defendants have maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

13.      Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a marketplace located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.     Plaintiff Abrahan Velazquez Cuautle ("Plaintiff Velazquez" or "Mr. Velazquez") is an adult individual residing in Queens County, New York.

20.     Plaintiff Velazquez was employed by Defendants at Hudson Market from approximately January 18, 2017 until on or about January 9, 2018.

21.     Plaintiff Arturo Gil Garita ("Plaintiff Gil" or "Mr. Gil") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Gil has been employed by Defendants at Hudson Market from approximately April 2017 until the present date.

23.     Plaintiff Cesario Vazquez Talavera ("Plaintiff Vazquez" or "Mr. Vazquez") is an adult individual residing in Kings County, New York.

24.     Plaintiff Vazquez has been employed by Defendants at Hudson Market from approximately October 2017 until the present date.

25.     Plaintiff Cristo Garcia Santiago ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Kings County, New York.

26.     Plaintiff Garcia was employed by Defendants at Hudson Market from approximately September 2016 until on or about March 10, 2018.

27.     Plaintiff Jose Humberto Becerra Buitrago ("Plaintiff Becerra" or "Mr. Becerra") is an adult individual residing in Hudson County, New Jersey.

28.     Plaintiff Becerra has been employed by Defendants at Hudson Market from approximately August 2016 until the present date.

29.     Plaintiff Jose Oscar Juarez Ramos ("Plaintiff Juarez" or "Mr. Juarez") is an adult individual residing in Queens County, New York.

30.     Plaintiff Juarez has been employed by Defendants at Hudson Market from approximately October 4, 2015 until the present date.

31.     Plaintiff Jose Perez Espinal ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Queens County, New York.

32.     Plaintiff Perez has been employed by Defendants at Hudson Market from approximately March 2017 until the present date.

33.     Plaintiff Jose Yat Chic (a/k/a Edgar Castro) ("Plaintiff Chic" or "Mr. Chic") is an adult individual residing in Bronx County, New York.

34.     Plaintiff Chic was employed by Defendants at Hudson Market from approximately August 2016 until on or about March 16, 2018.

35.     Plaintiff Pedro Ramales ("Plaintiff Ramales" or "Mr. Ramales") is an adult individual residing in Queens County, New York.

36.     Plaintiff Ramales has been employed by Defendants at Hudson Market from approximately September 2017 until the present date.

37.     Plaintiff Pedro Tecun Pol ("Plaintiff Tecun" or "Mr. Tecun") is an adult individual residing in Queens County, New York.

38.     Plaintiff Tecun has been employed by Defendants at Hudson Market from approximately March 15, 2017 until the present date.

39.     Plaintiff Rafael Pascual Chacaj Batz (a/k/a Edgar Perez) ("Plaintiff Chacaj" or "Mr. Chacaj") is an adult individual residing in Bronx County, New York.

40.     Plaintiff Chacaj was employed by Defendants at Hudson Market from approximately November 2016 until on or about March 15, 2018.

41.     Plaintiff Raul Antonio Cruz ("Plaintiff Antonio" or "Mr. Antonio") is an adult individual residing in Bronx County, New York.

42.     Plaintiff Antonio has been employed by Defendants at Hudson Market from approximately March 2016 until the present date.

*Defendants*

43.     At all relevant times, Defendants own, operate, or control a marketplace, located at 303 10th Avenue, New York, NY 10001 under the name "Hudson Market".

44.     Upon information and belief, Hudson Market 303 LLC (d/b/a Hudson Market) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 303 10th Avenue, New York, NY 10001.

45.     Defendant Christopher Santos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Christopher Santos is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Christopher Santos possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

46.     Defendant Chan K. Park is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chan K. Park is sued individually

in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Chan K. Park possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

47.     Defendant Terrence Park is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Terrence Park is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Terrence Park possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

48.     Defendant Scott Barner is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Scott Barner is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Scott Barner possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

49.     Defendant Greg Grossman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Greg Grossman is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Greg Grossman possesses operational control over Defendant Corporation, an ownership interest in

Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

50.     Defendant Adam Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Adam Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Adam Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

51.     Defendant Jazmin Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jazmin Doe is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Jazmin Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

52.     Defendant Zach Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Zach Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Zach Doe possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and

compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

53.     Defendants operate a marketplace located in the Chelsea section of Manhattan in New York City.

54.     Individual Defendants, Christopher Santos, Chan K. Park, Terrence Park, Scott Barner, Greg Grossman, Adam Doe, Jazmin Doe, and Zack Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

55.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

56.     Each Defendant has possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

57.     Defendants jointly have employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

58.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

59.     Upon information and belief, Individual Defendants Christopher Santos, Chan K. Park, Terrence Park, Scott Barner, Greg Grossman, Adam Doe, Jazmin Doe, and Zack Doe operate

Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of their own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

60.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

61.    In each year from 2015 to the present date, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

62.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the marketplace on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

63.    Plaintiffs are both current and former employees of Defendants who have been employed as line cooks, cook helpers, salad preparers, porters, dishwashers, food preparers and ostensibly as delivery workers.  However, the delivery workers have spent over 20% of their work time performing the non-delivery, non-tip duties described above.

64.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Abrahan Velazquez Cuautle*

65.    Plaintiff Velazquez was employed by Defendants from approximately January 18, 2017 until on or about January 9, 2018.

66.    Defendants employed Plaintiff Velazquez as a line cook.

67.    Plaintiff Velazquez regularly handled goods in interstate commerce, such as vegetables and other supplies produced outside the State of New York.

68.    Plaintiff Velazquez's work duties required neither discretion nor independent judgment.

69.    Throughout his employment with Defendants, Plaintiff Velazquez regularly worked in excess of 40 hours per week.

70.    From approximately January 2017 until on or about May 2017, Plaintiff Velazquez worked as a line cook from approximately 6:00 a.m. until on or about 3:20 p.m., three days a week

and from approximately 6:00 a.m. until on or about 3:00 p.m., three days a week (typically 55 hours per week).

71.     From approximately May 2017 until on or about September 2017, Plaintiff Velazquez worked as a line cook from approximately 6:00 a.m. until on or about 3:20 p.m., three days a week and from approximately 6:00 a.m. until on or about 3:00 p.m., four days a week (typically 64 hours per week).

72.     From approximately September 2017 until on or about January 9, 2018, Plaintiff Velazquez worked as a line cook from approximately 6:00 a.m. until on or about 3:20 p.m., three days a week and from approximately 6:00 a.m. until on or about 3:00 p.m., three days a week (typically 55 hours per week).

73.     Throughout his entire employment, Defendants paid Plaintiff Velazquez his wages by personal check.

74.     From approximately January 2017 until on or about October 2017, Defendants paid Plaintiff Velazquez $13.00 per hour.

75.     From approximately October 2017 until on or about January 9, 2018, Defendants paid Plaintiff Velazquez $14.00 per hour.

76.     Plaintiff Velazquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

77.     For example, Defendants required Plaintiff Velazquez to work an additional fifteen to 20 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

78.     Defendants only granted Plaintiff Velazquez a 30 minute meal period five days a week.

79.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Velazquez regarding overtime and wages under the FLSA and NYLL.

80.     Defendants did not provide Plaintiff Velazquez an accurate statement of wages, as required by NYLL 195(3).

81.     Defendants did not give any notice to Plaintiff Velazquez, in English and in Spanish (Plaintiff Velazquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

82.     Defendants required Plaintiff Velazquez to purchase "tools of the trade" with his own funds—including three pairs of pants and two pairs of shoes.

*Plaintiff Arturo Gil Garita*

83.     Plaintiff Gil has been employed by Defendants from approximately April 2017 until the present date.

84.     Defendants have employed Plaintiff Gil as a cook helper.

85.     Plaintiff Gil has regularly handled goods in interstate commerce, such as vegetables and other supplies produced outside the State of New York.

86.     Plaintiff Gil's work duties have required neither discretion nor independent judgment.

87.     Throughout his employment with Defendants, Plaintiff Gil has regularly worked in excess of 40 hours per week.

88.     From approximately April 2017 until on or about January 2018, Plaintiff Gil worked as a cook helper from approximately 5:45 a.m. until on or about 4:15 p.m., six days a week (typically 63 hours per week).

89.     From approximately January 2018 until the present date, Plaintiff Gil has worked as a cook helper from approximately 5:45 a.m. until on or about 3:00 p.m., six days a week (typically 55 hours per week).

90.     Throughout his entire employment, Defendants have paid Plaintiff Gil his wages by personal check.

91.     From approximately April 2017 until on or about January 2018, Defendants paid Plaintiff Gil $12.00 per hour.

92.     From approximately January 2018 until the present date, Defendants have paid Plaintiff Gil $14.00 per hour.

93.     Defendants have taken improper and illegal deductions of Plaintiff Gil's wages.

94.     Specifically, defendants have deducted $30.00 each week from Plaintiff Gil's check for eating meals that came from Hudson Market.

95.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Gil regarding overtime and wages under the FLSA and NYLL.

96.     Defendants have never provided Plaintiff Gil an accurate statement of wages, as required by NYLL 195(3).

97.     Defendants have never given any notice to Plaintiff Gil, in English and in Spanish (Plaintiff Gil's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Cesario Vazquez Talavera*

98.     Plaintiff Vazquez has been employed by Defendants from approximately October 2017 until the present date.

99.     Defendants have employed Plaintiff Vazquez as a salad preparer.

100.    Plaintiff Vazquez has regularly handled goods in interstate commerce, such as vegetables and other supplies produced outside the State of New York.

101.    Plaintiff Vazquez's work duties have required neither discretion nor independent judgment.

102.    Throughout his employment with Defendants, Plaintiff Vazquez has regularly worked in excess of 40 hours per week.

103.    From approximately October 2017 until on or about January 2018, Plaintiff Vazquez worked as a salad preparer from approximately 6:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 8:00 a.m. until on or about 4:00 p.m., on Sundays (typically 55.5 hours per week).

104.    From approximately January 2018 until on or about February 2018, Plaintiff Vazquez worked as a salad preparer from approximately 7:30 a.m. until on or about 10:00 p.m., Mondays, Wednesdays, and Fridays, from approximately 7:00 a.m. until on or about 3:00 p.m., Tuesdays and Thursdays, and from approximately 9:00 a.m. until on or about 9:00 p.m., on Sundays (typically 71.5 hours per week).

105.    From approximately March 2018 until the present date, Plaintiff Vazquez has worked as a salad preparer from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 9:00 p.m., on Saturdays (typically 54.5 hours per week).

106.    Throughout his entire employment, Defendants have paid Plaintiff Vazquez his wages by personal check.

107.    From approximately October 2017 until the present date, Defendants have paid Plaintiff Vazquez $13.00 per hour.

108.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Vazquez regarding overtime and wages under the FLSA and NYLL.

109.    Defendants have never provided Plaintiff Vazquez an accurate statement of wages, as required by NYLL 195(3).

110.    Defendants have never given any notice to Plaintiff Vazquez, in English and in Spanish (Plaintiff Vazquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Cristo Garcia Santiago*

111.    Plaintiff Garcia was employed by Defendants from approximately September 2016 until on or about March 10, 2018.

112.    Defendants employed Plaintiff Garcia as a salad preparer.

113.    Plaintiff Garcia regularly handled goods in interstate commerce, such as vegetables and other supplies produced outside the State of New York.

114.    Plaintiff Garcia's work duties required neither discretion nor independent judgment.

115.    Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

116.    From approximately September 2016 until on or about March 10, 2018, Plaintiff Garcia worked as a salad preparer from approximately 6:00 a.m. until on or about 4:00 p.m., six days a week (typically 60 hours per week).

117.    Throughout his entire employment, Defendants paid Plaintiff Garcia his wages in cash.

118.    From approximately September 2016 until on or about March 2017, Defendants paid Plaintiff Garcia $11.00 per hour.

119.    From approximately March 2017 until on or about January 2018, Defendants paid Plaintiff Garcia $12.50 per hour.

120.    From approximately January 2018 until on or about March 10, 2018, Defendants paid Plaintiff Garcia $13.00 per hour.

121.    Defendants only granted Plaintiff Garcia a 30 minute meal period four days a week.

122.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

123.    Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

124.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

125.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including two pairs of kitchen shoes.

*Plaintiff Jose Humberto Becerra Buitrago*

126.    Plaintiff Becerra has been employed by Defendants from approximately August 2016 until the present date.

127.    Defendants have employed Plaintiff Becerra as a porter from approximately August 2016 until on or about September 2017 and as a salad preparer from approximately September 2017 until the present date.

128.    Plaintiff Becerra has regularly handled goods in interstate commerce, such as vegetables and other supplies produced outside the State of New York.

129.     Plaintiff Becerra's work duties have required neither discretion nor independent judgment.

130.     Throughout his employment with Defendants, Plaintiff Becerra has regularly worked in excess of 40 hours per week.

131.     From approximately August 2016 until on or about October 2017, Plaintiff Becerra worked as a porter from approximately 6:30 a.m. until on or about 4:30 p.m. Mondays through Fridays (typically 50 hours per week).

132.     From approximately October 2017 until on or about December 31, 2017, Plaintiff Becerra worked as a salad preparer from approximately 6:30 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 47.5 hours per week).

133.     From approximately January 2018 until on or about February 2018, Plaintiff Becerra worked as a salad preparer from approximately 8:00 a.m. until on or about 10:00 p.m., Tuesdays and Thursdays, from approximately 8:00 a.m. until on or about 3:30 p.m., Mondays, Wednesdays and Fridays, and from approximately 12:00 p.m. until on or about 10:00 p.m., on Saturdays (typically 60.5 hours per week).

134.     From approximately August 2016 until on or about November 2016, Defendants paid Plaintiff Becerra his wages in cash.

135.     From approximately November 2016 until the present date, Defendants have paid Plaintiff Becerra his wages by personal check.

136.     From approximately August 2016 until on or about January 2017, Defendants paid Plaintiff Becerra $10.00 per hour.

137.     From approximately January 2017 until on or about October 2017, Defendants paid Plaintiff Becerra $11.00 per hour.

138.     From approximately October 2017 until the present date, Defendants have paid Plaintiff Becerra $13.00 per hour.

139.     Plaintiff Becerra's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

140.     For example, Defendants required Plaintiff Becerra to work an additional 30 minutes past his scheduled departure time every day from approximately August 2016 until on or about December 2017 and three days a week from approximately January 2018 until on or about February 2018, and did not pay him for the additional time he worked.

141.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Becerra regarding overtime and wages under the FLSA and NYLL.

142.     Defendants have never provided Plaintiff Becerra an accurate statement of wages, as required by NYLL 195(3).

143.     Defendants have never given any notice to Plaintiff Becerra, in English and in Spanish (Plaintiff Becerra's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Oscar Juarez Ramos*

144.     Plaintiff Juarez has been employed by Defendants from approximately October 4, 2015 until the present date.

145.     Defendants have employed Plaintiff Juarez as a dishwasher and ostensibly as a delivery worker.

146.     However, Plaintiff Juarez has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

147.    Although Plaintiff Juarez has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

148.    Plaintiff Juarez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

149.    Plaintiff Juarez's work duties have required neither discretion nor independent judgment.

150.    From approximately October 4, 2015 until on or about March 2016, Plaintiff Juarez worked as a delivery worker from approximately 7:00 a.m. until on or about 3:00 p.m., Mondays through Saturdays (typically 48 hours per week).

151.    From approximately October 2015 until on or about March 2016, Defendants paid Plaintiff Juarez his wages in cash.

152.    From approximately October 2015 until on or about March 2016, Defendants paid Plaintiff Juarez $10.45 per hour.

153.    Plaintiff Juarez has never been notified by Defendants that his tips are being included as an offset for wages.

154.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Juarez's wages.

155.    Defendants have withheld a portion of Plaintiff Juarez's tips; specifically, Defendants have pocketed 50% of the tips customers have written in for Plaintiff Juarez when he delivers catering orders once or twice a day.

156.    Although Plaintiff Juarez has been required to keep track of his time, on numerous occasions the time tracking system has not work and Plaintiff Juarez has not been able to punch in or out.

157.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL.

158.     Defendants have never provided Plaintiff Juarez an accurate statement of wages, as required by NYLL 195(3).

159.     Defendants have never given any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

160.     Defendants have required Plaintiff Juarez to purchase "tools of the trade" with his own funds—including a bicycle, a vest, and a chain.

*Plaintiff Jose Perez Espinal*

161.     Plaintiff Perez has been employed by Defendants from approximately March 2017 until the present date.

162.     Defendants have employed Plaintiff Perez as a food preparer and ostensibly as a delivery worker.

163.     However, Plaintiff Perez has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

164.     Although Plaintiff Perez has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

165.     Plaintiff Perez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

166.     Plaintiff Perez's work duties have required neither discretion nor independent judgment.

167.     Throughout his employment with Defendants, Plaintiff Perez has regularly worked in excess of 40 hours per week.

168.     From approximately March 2017 until the present date, Plaintiff Perez has worked as a delivery worker and a food preparer from approximately 3:00 p.m. until on or about 11:00 p.m., six days a week (typically 48 hours per week).

169.     From approximately March 2017 until on or about September 2017, Defendants paid Plaintiff Perez his wages in cash.

170.     From approximately September 2017 until the present date, Defendants have paid Plaintiff Perez his wages by personal check.

171.     From approximately March 2017 until on or about January 2018, Defendants paid Plaintiff Perez $11.00 per hour.

172.     From approximately January 2018 until the present date, Defendants have paid Plaintiff Perez $13.00 per hour.

173.     Plaintiff Perez's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

174.     For example, Defendants have required Plaintiff Perez to work an additional hour past his scheduled departure time every day, and have not paid him for the additional time he has worked.

175.     Although Defendants have granted Plaintiff Perez meal periods, he is often unable to take the break due to his job duties.

176.     Plaintiff Perez has never been notified by Defendants that his tips are being included as an offset for wages.

177.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

178.    Defendants have withheld a portion of Plaintiff Perez's tips; specifically, Defendants have pocketed 50% of the tips customers have written in for Plaintiff Perez when he delivers catering orders once or twice a day.

179.    On several occasions, Defendants have required Plaintiff Perez to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

180.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

181.    Defendants have never provided Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

182.    Defendants have never given any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

183.    Defendants have required Plaintiff Perez to purchase "tools of the trade" with his own funds—including ten bicycles, twenty helmets, fifty lights, bicycle maintenance every three months, five bells, and ten raincoats.

*Plaintiff Jose Yat Chic (a/k/a Edgar Castro)*

184.    Plaintiff Chic was employed by Defendants from approximately August 2016 until on or about March 16, 2018.

185.    Defendants ostensibly employed Plaintiff Chic as a delivery worker.

186.    However, Plaintiff Chic was also required to spend a significant portion of his work day performing the non-tipped duties described above.

187.    Although Plaintiff Chic ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

188.    Plaintiff Chic regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

189.    Plaintiff Chic's work duties required neither discretion nor independent judgment.

190.    From approximately August 2016 until on or about August 2017, Plaintiff Chic worked as a delivery worker from approximately 10:00 a.m. until on or about 4:00 p.m., six days a week (typically 36 hours per week).

191.    From approximately August 2017 until on or about March 16, 2018, Plaintiff Chic worked as a delivery worker from approximately 10:00 a.m. until on or about 4:00 p.m., four days a week (typically 24 hours per week).

192.    From approximately August 2016 until on or about September 2017, Defendants paid Plaintiff Chic his wages in cash.

193.    From approximately September 2017 until on or about March 16, 2018, Defendants paid Plaintiff Chic his wages by personal check.

194.    From approximately August 2016 until on or about January 2017, Defendants paid Plaintiff Chic $9.00 per hour.

195.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Chic $11.00 per hour.

196.    From approximately January 2018 until on or about March 16, 2018, Defendants paid Plaintiff Chic $13.00 per hour.

197.    Defendants never granted Plaintiff Chic any breaks or meal periods of any kind.

198.    Plaintiff Chic was never notified by Defendants that his tips were being included as an offset for wages.

199.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Chic's wages.

200.    Defendants withheld a portion of Plaintiff Chic's tips; specifically, Defendants pocketed 50% of the tips customers wrote in for Plaintiff chic when he delivered catering orders once or twice a day.

201.    On several occasions, Defendants required Plaintiff Chic to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

202.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chic regarding overtime and wages under the FLSA and NYLL.

203.    Defendants did not provide Plaintiff Chic an accurate statement of wages, as required by NYLL 195(3).

204.    Defendants did not give any notice to Plaintiff Chic, in English and in Spanish (Plaintiff Chic's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

205.    Defendants required Plaintiff Chic to purchase "tools of the trade" with his own funds—including ten bicycles, twenty helmets, fifty lights, bicycle maintenance every months, five bells, and ten rain coats.

*Plaintiff Pedro Ramales*

206.    Plaintiff Ramales has been employed by Defendants from approximately September 2017 until the present date.

207.    Defendants have employed Plaintiff Ramales as a porter and ostensibly as a delivery worker.

208.    However, Plaintiff Ramales has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

209.    Although Plaintiff Ramales has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

210.    Plaintiff Ramales has regularly handled goods in interstate commerce, such as cleaning solutions and other supplies produced outside the State of New York.

211.    Plaintiff Ramales's work duties have required neither discretion nor independent judgment.

212.    Throughout his employment with Defendants, Plaintiff Ramales has regularly worked in excess of 40 hours per week.

213.    From approximately September 2017 until the present date, Plaintiff Ramales has worked as a porter and a delivery worker from approximately 6:30 a.m. until on or about 4:15 p.m., five days a week (typically 48.75 hours per week).

214.    From approximately September 2017 until on or about December 2017, Defendants paid Plaintiff Ramales his wages by business check.

215.    From approximately January 2018 until the present date, Defendants have paid Plaintiff Ramales his wages by personal check.

216.    From approximately September 2017 until on or about February 15, 2018, Defendants paid Plaintiff Ramales $12.00 per hour.

217.    From approximately February 16, 2018 until the present date, Defendants have paid Plaintiff Ramales $13.00 per hour.

218.   Plaintiff Ramales has never been notified by Defendants that his tips are being included as an offset for wages.

219.   Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Ramales' wages.

220.   Defendants have withheld a portion of Plaintiff Ramales' tips; specifically, defendants have withheld 50% of the tips customers have written in for Plaintiff Ramales when he delivers catering orders.

221.   No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Ramales regarding overtime and wages under the FLSA and NYLL.

222.   Defendants have never provided Plaintiff Ramales an accurate statement of wages, as required by NYLL 195(3).

223.   Defendants have never given any notice to Plaintiff Ramales, in English and in Spanish (Plaintiff Ramales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

224.   Defendants have required Plaintiff Ramales to purchase "tools of the trade" with his own funds—including a pair of shoes and three pairs of pants.

*Plaintiff Pedro Tecun Pol*

225.   Plaintiff Tecun has been employed by Defendants from approximately March 15, 2017 until the present date.

226.   Defendants have employed Plaintiff Tecun as a dishwasher.

227.   Plaintiff Tecun has regularly handled goods in interstate commerce, such as liquid soap and other supplies produced outside the State of New York.

228.   Plaintiff Tecun's work duties have required neither discretion nor independent judgment.

229.   Throughout his employment with Defendants, Plaintiff Tecun has regularly worked in excess of 40 hours per week.

230.   From approximately March 15, 2017 until on or about July 2017, Plaintiff Tecun worked as a dishwasher from approximately 7:00 a.m. until on or about 3:00 p.m., six days a week (typically 48 hours per week).

231.   From approximately July 2017 until the present date, Plaintiff Tecun has worked as a dishwasher from approximately 7:30 a.m. until on or about 10:10 p.m., five days a week and from approximately 7:30 a.m. until on or about 1:10 p.m., one day a week (typically 79 hours per week).

232.   Throughout his entire employment, Defendants have paid Plaintiff Tecun his wages by personal check.

233.   From approximately March 15, 2017 until on or about July 2017, Defendants paid Plaintiff Tecun a fixed salary of $500 per week.

234.   From approximately July 2017 until the present date, Defendants have paid Plaintiff Tecun a fixed salary of $1000 per week.

235.   Plaintiff Tecun's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

236.   For example, Defendants have required Plaintiff Tecun to work an additional 10 minutes past his scheduled departure time every day, and have not paid him for the additional time he has worked.

237.   No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Tecun regarding overtime and wages under the FLSA and NYLL.

238.     Defendants have never provided Plaintiff Tecun an accurate statement of wages, as required by NYLL 195(3).

239.     Defendants have never given any notice to Plaintiff Tecun, in English and in Spanish (Plaintiff Tecun's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rafael Pascual Chacaj Batz (a/k/a Edgar Perez)*

240.     Plaintiff Chacaj was employed by Defendants from approximately November 2016 until on or about March 15, 2018.

241.     Defendants ostensibly employed Plaintiff Chacaj as a delivery worker.

242.     However, Plaintiff Chacaj also was required to spend a significant portion of his work day performing the non-tipped duties described above.

243.     Although Plaintiff Chacaj was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

244.     Plaintiff Chacaj regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

245.     Plaintiff Chacaj's work duties required neither discretion nor independent judgment.

246.     Throughout his employment with Defendants, Plaintiff Chacaj regularly worked in excess of 40 hours per week.

247.     From approximately November 2016 until March 15, 2018, Plaintiff Chacaj worked as a delivery worker for a range of 60 to 78 hours, seven days a week.

248.     Throughout his entire employment, Defendants paid Plaintiff Chacaj his wages by check.

249.    From approximately November 2016 until on or about December 2017, Defendants paid Plaintiff Chacaj $11.00 per hour.

250.    From approximately January 1, 2018 until on or about March 15, 2018, Defendants paid Plaintiff Chacaj $13.00 per hour.

251.    Plaintiff Chacaj's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

252.    For example, Defendants required Plaintiff Chacaj to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

253.    Plaintiff Chacaj was never notified by Defendants that his tips were being included as an offset for wages.

254.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Chacaj's wages.

255.    Defendants withheld a portion of Plaintiff Chacaj's tips; specifically, Defendants pocketed 50% of the tips customers wrote in for Plaintiff Chacaj when he delivered catering orders once or twice a day.

256.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chacaj regarding overtime and wages under the FLSA and NYLL.

257.    Defendants never provided Plaintiff Chacaj an accurate statement of wages, as required by NYLL 195(3).

258.    Defendants never gave any notice to Plaintiff Chacaj, in English and in Spanish (Plaintiff Chacaj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

259.    Defendants required Plaintiff Chacaj to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, two sets of lights, bike maintenance, two new tires, bicycle breaks, one lock, a jacket, and taxi fare for a catering order made on February 15, 2018 for approximately $16.00.

*Plaintiff Raul Antonio Cruz*

260.    Plaintiff Antonio has been employed by Defendants from approximately March 2016 until on or about July 31, 2017 and from approximately September 2017 until the present date.

261.    Defendants have employed Plaintiff Antonio as a cook.

262.    Plaintiff Antonio has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

263.    Plaintiff Antonio's work duties have required neither discretion nor independent judgment.

264.    Throughout his employment with Defendants, Plaintiff Antonio has regularly worked in excess of 40 hours per week.

265.    From approximately March 2016 until on or about July 31, 2017, Plaintiff Antonio worked as a cook from approximately 6:00 a.m. until on or about 4:00 p.m., three days a week and from approximately 6:00 a.m. until on or about 4:30 p.m., three days a week (typically 61.5 hours per week).

266.    From approximately September 2017 until the present date, Plaintiff Antonio has worked as a cook from approximately 6:00 a.m. until on or about 3:00 p.m., three days a week and from approximately 6:00 a.m. until on or about 3:30 p.m., three days a week (typically 55.5 hours per week).

267.    Throughout his entire employment, Defendants have paid Plaintiff Antonio his wages in cash.

268.    From approximately March 2016 until on or about July 31, 2017, Defendants paid Plaintiff Antonio $10.50 per hour.

269.    From approximately September 2017 until the present date, Defendants have paid Plaintiff Antonio $13.00 per hour.

270.    Plaintiff Antonio's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

271.    For example, Defendants have required Plaintiff Antonio to work an additional 30 minutes past his scheduled departure time three days a week, and have not paid him for the additional time he has worked.

272.    Although defendants have never granted Plaintiff Antonio any breaks or meal periods of any kind, they illegally deduct three meal break hours from his weekly pay.

273.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Antonio regarding overtime and wages under the FLSA and NYLL.

274.    Defendants have never provided Plaintiff Antonio an accurate statement of wages, as required by NYLL 195(3).

275.    Defendants have never given any notice to Plaintiff Antonio, in English and in Spanish (Plaintiff Antonio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

276.    On at least three occasions, in order to release his weekly pay, Defendants have required Plaintiff Antonio to sign a document, the contents of which he is not able to review because the document is written in English.

277.    Defendants have required Plaintiff Antonio to purchase "tools of the trade" with his own funds—including three pairs of shoes, three cooking knives, four pairs of pants, and six cooking hats.

*Defendants' General Employment Practices*

278.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

279.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

280.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

281.    Defendants have habitually required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

282.    Defendants have required all Plaintiffs who work as delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers. These Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

283.     However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

284.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

285.     The delivery workers' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general marketplace work with duties, including the non-tipped duties described above.

286.     Defendants have failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

287.     Defendants have failed to inform Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

288.     Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers and for the tips they received.

289.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving the delivery workers a portion of the tips earned during the course of employment.

290.     Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

291.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

292.     Defendants' time keeping system has not reflect the actual hours that Plaintiffs have worked.

293.     Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in order to release their wages.

294.     Plaintiffs have been paid their wages either in cash or by personal check.

295.     Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

296.     Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

297.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

298.     Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

299.     Defendants have failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

300.     Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

301.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

302.     At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they have had substantially similar job requirements and pay provisions,

and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

303.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

304.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

305.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

306.     At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

307.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

308.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

309.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

310.     Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

311.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

312.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

313.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

314.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

315.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

316.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

317.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

318.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

319.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

320.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

321.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

322.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

323.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

324.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

325.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

326.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

327.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

328.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

329.     Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

330.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

331.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

332.     With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

333.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

334.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

335.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

336.    Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

337.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

338.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

339.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

340.    Defendants have unlawfully misappropriated a portion of Plaintiffs' tips that have been received from customers.

341.    Defendants have knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

342.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

343.    Defendants have not paid Plaintiffs on a regular weekly basis, in violation of NYLL §191.

344.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d) Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f) Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i) Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j) Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k) Declaring that Defendants have violated the timely payment provisions of the NYLL as to Plaintiffs;

(l) Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order have been willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

April 3, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 20, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Abrahan Velazquez Cuautle

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              20 de Marzo del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Arturo Gil Garita

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          19 de Marzo del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              **Cesario Vazquez- Talavera**

                            Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

                            19 de marzo de 2018
Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                       Cristo Garcia Santiago
Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        19 de marzo 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Humberto Becerra Buitrago

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 *Jose H Becerra B.*

Date / Fecha:                      19 de marzo de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Jose Oscar Juarez Ramos**

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                  19 de marzo de 2018

Date / Fecha:

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Jose Perez Espinal
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          _____

Date / Fecha:               19 de marzo 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

March 16, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Yat  Chic

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     16 de Marzo 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Pedro Ramales

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                 *Pedro Ramales*

Date / Fecha:                      19 de marzo de 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Pedro Tecun Pol
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      19 de marzo 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                    Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 20, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Rafael Pascual Chacaj Batz

Legal Representative / Abogado:      Michael Faillace & Associates, P.C._____

Signature / Firma:                  _____

Date / Fecha:                       _____ 20 de febrero de 2018 _____

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 22, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Raul Antonio Cruz

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       22 de Marzo, 2018

*Certified as a minority-owned business in the State of New York*